## UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ACADIANA MANAGEMENT GROUP, LLC, et al, | ) | Case No. 19-496 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Patricia E. Campbell-Smith |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## AMENDED CLASS ACTION COMPLAINT

NOW INTO COURT, through the undersigned counsel, come Acadiana Management Group, LLC, Albuquerque-AMG Specialty Hospital, LLC, Central Indiana-AMG Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, Houma-AMG Specialty Hospital, LLC, LTAC of Louisiana, LLC, Las Vegas-AMG Specialty Hospital, LLC, Warren Boegel, Boegel Farms, LLC, and Three Bo's, Inc., plaintiffs in the above-captioned matter, who respectfully represent as follows:

### INTRODUCTION

Chapter 11 of Title 11 of the United States Code provides for bankruptcy relief that is typically used by financially distressed business entities and high net worth individuals who do not otherwise qualify for relief under another chapter of the Bankruptcy Code. Chapter 11 debtors' cases may be directed by a debtor in possession (11 U.S.C. §1107), by a trustee (11 U.S.C. §1104), or in some cases, by a party or parties appointed under a confirmed Chapter 11 plan. In all instances, the Chapter 11 debtors must pay a quarterly fee based on disbursements while their cases are pending, which fee is ultimately deposited into the U.S. Treasury. See 28 U.S.C. § 1930(a)(6)-(7). As would be expected, quarterly fees increase under 28 U.S.C. §1930(a)(6), as disbursements increase.

In all federal judicial districts other than those located in the states of Alabama and North Carolina, the quarterly fees are collected by the applicable United States Trustee ("UST"). The

United States Trustee Program ("USTP") does not operate in North Carolina and Alabama, as a sunset provision which required those districts to opt into the USTP was removed on November 13, 2000, prior to expiration. In those two states, Bankruptcy Administrators appointed by the courts and supervised by the Administrative Office of the United States Courts and the Judicial Conference of the United States collect the quarterly fee from Chapter 11 debtors.

Throughout 2017, the same quarterly fee schedule applied to all Chapter 11 debtors across the nation. Pursuant to 28 U.S.C. § 1930(a)(7), the Judicial Conference of the United States required Chapter 11 debtors in North Carolina and Alabama to pay fees equal to the amounts imposed by § 1930(a)(6).

The Bankruptcy Judgeship Act of 2017 ("2017 Act") was signed into law on October 26, 2017. The 2017 Act added subsection (a)(6)(B) to 28 U.S.C.§ 1930, authorizing a quarterly fee equal to 1% of disbursements where disbursements equal or exceed $1,000,000 in any given quarter, with a maximum fee of $250,000, if the balance of the United States Trustee System Fund is below $200,000,000 as of September 30 of the most recent fiscal year. The new fee scheme yields an approximately 733% increase in the maximum quarterly fee, and the United States Department of Justice estimated the fee increase would generate $155,000,000 in additional revenue for the Treasury.

Of note, in USTP districts, § 1930(a)(6)(B) has been applied to cases which were filed *before* the signing of the 2017 Act. However, the Judicial Conference delayed implementation of the quarterly fee increase from the 2017 Act in the states of North Carolina and Alabama until October 1, 2018, and then only applied the fee increase to Chapter 11 cases filed *on or after* October 1, 2018.

The AMG plaintiffs, who originally filed this lawsuit, are seven reorganized debtors whose Chapter 11 cases were filed in June 2017 (*before* the 2017 Act was signed into law), whose joint plan was confirmed in February 2018 (*after* the 2017 Act was signed into law), and whose joint plan was effective in May 2018. These plaintiffs' Chapter 11 cases were closed in June 2018 with a final decree. The AMG cases were pending in the United States Bankruptcy Court for the Western District of Louisiana, which is part of Region 5 of the USTP. The Boegel plaintiffs cases were filed on February 23, 2017, with their cases being dismissed in June of 2018 and were pending in the District of Kansas which is part of Region 20 of the USTP. As such, plaintiffs paid first and second quarter fees in 2018 under 28 U.S.C. § 1930(a)(6)(B). **Plaintiffs paid $357,629.69 more in quarterly fees than they would have paid if their cases were pending in Alabama or North Carolina.**

Given the non-uniformity of fees charged to Chapter 11 debtors, defendant has implemented a non-uniform bankruptcy law in violation of Article 1, §8, Cl. 4 the Constitution of the United States. Plaintiffs, on their own behalf, and for those similarly situated, ask the Court to determine that 28 U.S.C. § 1930(a)(6-7) is unconstitutional as applied to Chapter 11 estates whose cases were filed before October 1, 2018, and seek, on behalf of those who paid an increased quarterly fee,[1] a judgment awarding the amount of the increased quarterly fees paid, based on a cause of action for illegal exaction under the Tucker Act, 28 U.S.C. §1491.

Alternatively, plaintiffs allege that the increased quarterly fees charged to them are unconstitutional as applied to them due to retroactive application of the increased quarterly fees to

---

[1] At least one Bankruptcy Court has already so ruled in considering a motion to determine a Chapter 11 debtor's liability for quarterly fees. *See In re Buffets, LLC*, Case No. 16-50557-RBK, 2019 WL 518318 (Bkr. S.D. Tex. 2019). This case is on appeal to the District Court although a motion is pending for certification of a direct appeal to the United States Court of Appeals for the Fifth Circuit.

cases filed prior to the Bankruptcy Judgeship Act of 2017.  Plaintiffs, on their own behalf and on

behalf of those similarly situated, ask the Court to find 28 U.S.C. § 1930(a)(6)(B) unconstitutional

as applied to Chapter 11 debtors whose cases were filed before October 26, 2017, and who paid

the increased quarterly fee, and to award them a judgment in the amount of the increased quarterly

fees paid, based on a cause of action for illegal exaction under the Tucker Act.

## ALLEGATIONS

1.

Plaintiffs herein are:

  a.  Acadiana Management Group, LLC, a limited liability company who was a Chapter 11 debtor in Bankruptcy Case 17-50799 in the United States Bankruptcy Court in the Western District of Louisiana;

  b.  Albuquerque-AMG Specialty Hospital, LLC, a limited liability company who was a Chapter 11 debtor in Bankruptcy Case 17-50802 in the United States Bankruptcy Court in the Western District of Louisiana;

  c.  Central Indiana-AMG Specialty Hospital, LLC, a limited liability company who was a Chapter 11 debtor in Bankruptcy Case 17-50803 in the United States Bankruptcy Court in the Western District of Louisiana;

  d.  LTAC Hospital of Edmond, LLC, a limited liability company who was a Chapter 11 debtor in Bankruptcy Case 17-50810 in the United States Bankruptcy Court in the Western District of Louisiana;

  e.  Houma-AMG Specialty Hospital, LLC, a limited liability company who was a Chapter 11 debtor in Bankruptcy Case 17-50809 in the United States Bankruptcy Court in the Western District of Louisiana;

f.    LTAC of Louisiana, LLC, a limited liability company who was a Chapter 11

debtor in Bankruptcy Case 17-50805 for the United States Bankruptcy Court

in the Western District of Louisiana;

g.    Las Vegas-AMG Specialty Hospital, LLC, a limited liability company who

was a Chapter 11 debtor in Bankruptcy Case 17-50806 in the United States

Bankruptcy Court in the Western District of Louisiana. (Plaintiffs a-g will

be referred to as the "AMG Plaintiffs");

h.    Warren L. Boegel, an individual who was a Chapter 11 debtor in

Bankruptcy Case No. 17-10224 in the United States Bankruptcy Court for

the District of Kansas;

i.    Boegel Farms, LLC, a limited liability company who was a Chapter 11

debtor in Bankruptcy Case No. 17-10222 in the United States Bankruptcy

Court for the District of Kansas; and

j.    Three Bo's, Inc., a corporation who was a Chapter 11 debtor in Bankruptcy

Case No. 17-10221 in the United States Bankruptcy Court for the District

of Kansas (Plaintiffs h-j will be referred to as the "Boegel Plaintiffs.")

2.

Made defendant herein is the United States of America, who receives the Chapter 11

quarterly fees paid by the plaintiffs as delineated herein and those similarly situated, and whose

agents assess bill, and collect said quarterly fees.

## JURISDICTION

3.

This Court has subject matter jurisdiction pursuant to the Tucker Act, 28 U.S.C. §1491. Each

plaintiff and putative class member has multiple illegal exaction claims against the United States for collection of non-uniform and retroactively applied Chapter 11 quarterly fees assessed pursuant to 28 U.S.C. § 1930, premised on Article 1, §8, Cl. 4 and the Fifth Amendment of the Constitution of the United States.

## FACTUAL ALLEGATIONS

4.

The current general bankruptcy law of the United States of America was established by the Bankruptcy Reform Act of 1978 ("1978 Act"), inclusive of Chapter 11 of Title 11 of the United States Code.

5.

Under prior bankruptcy law, the federal court sitting in bankruptcy appointed Trustees and supervised debtors in possession. The 1978 Act created a pilot program called the United States Trustee Program ("USTP") under the auspices of the U.S. Department of Justice. The function of the USTP was to assume the duties formerly exercised by the courts of appointing and supervising private bankruptcy trustees and supervising debtors in possession, among other statutorily prescribed duties. In 1986, the Bankruptcy Judges, U.S. Trustees, and Family Farmer Bankruptcy Act of 1986 ("1986 Act") expanded the USTP to twenty-one regions covering all federal judicial districts in the United States, *except* those in Alabama and North Carolina.

6.

The federal judicial districts in Alabama and North Carolina, rather than be a part of the USTP, implemented the Bankruptcy Administrator Program ("BAP"), which reports to the Administrative Office of the United States Courts and the Judicial Conference of the United States. Bankruptcy Administrators, appointed pursuant to the BAP by the local federal courts, likewise

appoint and supervise private bankruptcy trustees and supervise debtors in possession.  At one point, Congress had mandated the Alabama and North Carolina districts to implement the USTP no later than October 1, 2002.  See 104 Stat. 5115, 5116. However, Congress gave the judicial districts in Alabama and North Carolina the permanent right to not opt into the USTP in the Federal Courts Improvement Act of 2000.  See 114 Stat. 2410, 2422.

7.

Prior to the Federal Courts Improvement Act of 2000 ("2000 Act"), Chapter 11 debtors in the USTP districts paid quarterly fees pursuant to 28 U.S.C. § 1930(a)(6), while Chapter 11 debtors in BAP districts paid no such fees.[2]  The 2000 Act added 28 U.S.C. § 1930(a)(7), which allowed the Judicial Conference to assess, and Bankruptcy Administrators to collect, quarterly fees from Chapter 11 debtors in BAP districts in the same amounts charged under 28 U.S.C. § 1930(a)(6).  At that point, the Judicial Conference implemented the same fee schedule in BAP districts as then applied in USTP districts.

8.

On October 26, 2017, the President of the United States signed into law the Bankruptcy Judgeship Act of 2017 which amended 28 U.S.C. § 1930(a)(6); the then-standard quarterly fee schedule was designated subpart (A), and subpart (B) was added as follows:

> During each of fiscal years 2018 through 2022, if the balance in the United States Trustee System Fund as of September 30 of the most recent full fiscal year is less than $200,000,000, the quarterly fee payable for a quarter in which disbursements equal or exceed $1,000,000 shall be the lesser of 1 percent of such disbursements or $250,000.

28 U.S.C. § 1930(a)(6)(B).  The increased quarterly fee of one percent (1%) of disbursements equal

---

[2] See *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525 (9th Cir.1994).

to or exceeding $1,000,000, up to a maximum fee of $250,000 (the "Increased Fee") was implemented by the defendant in USTP districts beginning in the first quarter of 2018, given that the balance of the United States Trustee System Fund was below $200,000,000 as of September 30, 2017.

9.

Thus, in federal judicial districts which are part of the USTP, defendant has been billing and collecting the Increased Fee on Chapter 11 quarterly disbursements equal to or exceeding $1,000.000, with a limit of $250,000.00, in bankruptcy cases filed before October 1, 2018.

10.

In response to the Increased Fee enacted by Congress and signed into law by the President, the Judicial Conference of the United States, pursuant to 28 U.S.C. § 1930(a)(7), implemented the Increased Fee beginning in the fourth quarter of 2018 in BAP Judicial Districts. However, the implementation in the BAP districts did not apply to cases filed before October 1, 2018. Rather, in the BAP districts, Chapter 11 debtors in cases filed prior to October 1, 2018 continued to pay fees in the amounts prescribed under the prior scheme as delineated in 28 U.S.C. § 1930(a)(6)(A), unlike similarly-situated debtors in USTP Districts.

11.

The AMG Plaintiffs' bankruptcy cases were filed on June 23, 2017, with a joint plan of reorganization confirmed on March 13, 2018, and final decrees entered as to the plaintiffs on June 15, 2018. The Boegel Plaintiffs' bankruptcy cases were filed on February 23, 2017, with structured dismissals being entered on June 18, 2018 and June 21, 2018.

12.

Plaintiffs, as a result of defendant's actions pled above, paid higher fees for the first two

quarters of 2018 than if their cases had been pending in either Alabama or North Carolina, to-wit:

| Party | Total Disbursements First Quarter | Old Fee | New Fee | Difference |
|---|---|---|---|---|
| Acadiana Management Group, LLC | $4,248,154.94 | $10,400.00 | $42,481.55 | ($32,081.55) |
| Albuquerque-AMG Specialty Hospital, LLC | $2,585,468.41 | $9,750.00 | $25,854.68 | ($16,104.68) |
| Central Indiana-AMG Specialty Hospital, LLC | $3,585,426.31 | $10,400.00 | $35,854.26 | ($25,454.26) |
| LTAC Hospital of Edmond, LLC | $2,970,763.88 | $9,750.00 | $29,707.63 | ($19,957.63) |
| Houma-AMG Specialty Hospital, LLC | $2,740,533.37 | $9,750.00 | $27,405.33 | ($17,655.33) |
| LTAC of Louisiana, LLC | $1,901,335.55 | $6,500.00 | $19,013.36 | ($12,513.36) |
| Las Vegas-AMG Specialty Hospital, LLC | $1,853,100.55 | $6,500.00 | $18,531.01 | ($12,031.01) |

**TOTAL:          ($135,797.82)**

| Party | Total Disbursements Second Quarter | Old Fee | New Fee | Difference |
|---|---|---|---|---|
| Acadiana Management Group, LLC | $2,480,541.30 | $9,750.00 | $24,805.41 | ($15,055.41) |
| Albuquerque-AMG Specialty Hospital, LLC | $3,059,013.58 | $10,400.00 | $30,590.14 | ($20,190.14) |

| | | | | |
|---|---|---|---|---|
| Central Indiana-AMG Specialty Hospital, LLC | $2,140,542.89 | $9,750.00 | $21,405.43 | ($11,655.43) |
| LTAC Hospital of Edmond, LLC | $1,718,395.09 | $6,500.00 | $17,183.95 | ($10,683.95) |
| Houma-AMG Specialty Hospital, LLC | $1,477,510.42 | $6,500.00 | $14,775.10 | ($8,275.10) |
| LTAC of Louisiana, LLC | $1,511,966.95 | $6,500.00 | $15,119.67 | ($8,619.67) |
| Las Vegas-AMG Specialty Hospital, LLC | $1,300,717.10 | $6,500.00 | $13,007.17 | ($6,507.17) |

                                                          **TOTAL:   ($80,986.87)**

**COMBINED TOTAL FOR AMG PLAINTIFFS  (Q1 and  Q2):  ($216,784.69)**

| Party | Quarter (2018) | Total Disbursements | Old Fee | New Fee | Difference |
|---|---|---|---|---|---|
| Boegel Farms, LLC | 2Q | $10,628,000 | $13,000 | $106,280 | ($93,280) |
| Three Bo's, Inc. | 1Q | $4,364,200 | $10,400 | $43,642 | ($33,062) |
| Warren Boegel | 1Q | $2,425,300 | $9,750 | $24,253 | ($14,503) |

**COMBINED TOTAL FOR BOEGEL PLAINTIFFS       TOTAL:        ($140,845)**

12.

The defendant has therefore exacted funds from the plaintiffs in the amount of $216,784.69

in the case of the AMG Plaintiffs and $140,845 in the case of the Boegel Plaintiffs pursuant to a

non-uniform bankruptcy law in violation of Article 1, §8, Cl. 4 of the Constitution of the United

States, and pursuant to a law retroactively applied in violation of the Due Process Clause of the Fifth

Amendment of the Constitution of the United States.

## CLASS ACTION ALLEGATIONS-COUNT 1
## NON-UNIFORM BANKRUPTCY LAW

### 13.

Plaintiffs bring this class action under Rule 23 of the Rules of the United States Court of Federal Claims.

### 14.

Plaintiffs seek certification of the following class:

*All individuals and entities that have paid or are paying increased Chapter 11 quarterly fees to the United States pursuant to 28 U.S.C. § 1930(a)(6)(B), whose bankruptcy cases were filed prior to October 1, 2018.*

### 15.

The class is so numerous that joinder of all members is impracticable. While the exact number and identity of class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that the number of class members is approximately 600-1,000, possibly greater. The precise number and identification of class members will be ascertainable through defendant's records.

### 16.

There are questions of law and fact common to all members of the class, including the following predominating legal question of Count 1 of this lawsuit:

*Is 28 U.S.C. § 1930(a)(6-7), as applied to debtors whose Chapter 11 bankruptcy cases were filed before October 1, 2018, unconstitutional under Article 1, §8, Cl. 4 of the Constitution of the United States?*

17.

The plaintiffs will fairly and adequately protect the interests of the class because each of them paid the Increased Fee during the class period. Their interests do not conflict with the interests of the class, and they have obtained counsel experienced in litigating class actions and in matters involving the same or similar questions of law.  Proposed class counsel, Gold, Weems, Bruser, Sues & Rundell, has extensive experience in bankruptcy law. Lead attorney Bradley L. Drell, chair of the firm's bankruptcy practice, is a Specialist in Business Bankruptcy Law as certified by the Louisiana Board of Legal Specialization and the American Board of Certification, and has successfully litigated numerous issues of bankruptcy law through trial and appeal in various federal courts over the past twenty-one years, including the United States Court of Appeals for the Fifth Circuit.  Additionally, two of the firm's lawyers, Charles S. Weems and Heather M. Mathews, have experience in prosecution of class action matters and have served as class counsel, with Mr. Weems serving as trial counsel in a matter which settled during trial, to the benefit of the class. *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd*., 1:05-cv-12024 (D. Mass.).

18.

The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating plaintiffs' claims. Joinder of all members is impracticable. Furthermore, because the injuries suffered by individual class members in some cases may be relatively small – as demonstrated by the claim amounts of certain plaintiffs herein – the expense and burden of individual litigation make it impossible for many members of the class to individually address the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

19.

The superiority requirement of RCFC 23(b)(3) mandates that a class action be "superior to other available methods for fairly and efficiently adjudicating" the particular controversy at issue. Under the express terms of the Tucker Act, the Court of Federal Claims is the superior forum to bring this action, as opposed to one of the bankruptcy courts throughout the country.[3]

20.

Plaintiffs bring this case pursuant to the Tucker Act, 28 U.S.C. §1491, which waives sovereign immunity and "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-74 (Fed. Cir. 1996). Courts have long recognized such an "illegal exaction" claim—a claim that money was "improperly paid, exacted, or taken from a claimant" in violation of a statute or the Constitution, regardless of whether the statute or the Constitution itself creates an express or implied monetary remedy.[4] Plaintiffs would submit that, in any event, Article 1, §8, Cl. 4 of the Constitution of the United States is so inextricably intertwined with money – given that bankruptcy's primary object is financial – that this provision of the Constitution should be interpreted as a money-mandating provision of the law.

---

[3] There is a circuit split as to whether the United States' waiver of sovereign immunity for Tucker Act claims extends beyond the Court of Federal Claims to bankruptcy courts. The Federal Circuit and the Ninth Circuit disagree as to whether the Tucker Act waives sovereign immunity over Tucker Act claims brought in bankruptcy courts with jurisdiction to hear such claims. *See Quality Tooling, Inc. v. United States*, 47 F.3d 1569 (Fed. Cir. 1995), and *McGuire v. United States*, 550 F.3d 903 (9th Cir. 2008).  In light of this circuit split, the superior forum for Tucker Act claims is the Court of Federal Claims, which is precisely where the plaintiffs bring this class action suit.

[4] *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005); *N. Cal. Power Agency v. United States*, 122 Fed. Cl. 111, 116 (Fed. Cl. 2015).

**CLASS ACTION ALLEGATIONS-COUNT 2**
**ILLEGAL EXACTION PREMISED ON RETROACTIVE APPLICATION**
**OF THE INCREASED FEE AS VIOLATIVE OF THE DUE PROCESS CLAUSE**
**OF THE FIFTH AMENDMENT**

21.

Alternatively, Plaintiffs seek certification of the following class:

*All individuals and entities that have paid or are paying increased Chapter 11 quarterly fees to the United States pursuant to 28 U.S.C. § 1930(a)(6)(B) whose bankruptcy cases were filed prior to October 26, 2017.*

22.

There are questions of law common to all members of the class, including the following predominating legal question of Count 2:

*Does the effective retroactive application of 28 U.S.C. § 1930(a)(6)(B) to debtors whose cases were filed before October 26, 2017 violate the Due Process Clause of the Fifth Amendment of the United States Constitution?*

23.

The class is so numerous that joinder of all members is impracticable. While the exact number and identity of class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that the number of class members is approximately 600, possibly greater. The precise number and identification of class members will be ascertainable through defendant's records.

24.

Plaintiffs re-urge the allegations of Paragraph 17 of the Complaint.

25.

Plaintiffs re-urge the allegations of Paragraph 18 of the Complaint.

26.

Plaintiffs re-urge the allegations of Paragraph 19 of the Complaint.

27.

The defendant acted unconstitutionally in contravention of the Due Process of the Fifth Amendment of the United States Constitution when it disregarded the retroactive effects of 28 U.S.C. § 1930(a)(6)(B) on the rights of every party to a Chapter 11 case, other than in Alabama and North Carolina, pending on the enactment date of the Act. § 1930(a)(6)(B) affects the legality of past private action on a going forward basis—except for those debtors who filed Chapter 11 cases in Alabama and North Carolina before October 1, 2018. The sheer magnitude of the increased fees fundamentally alters the post-petition landscape for these Chapter 11 debtors who had cases pending under the long-established fee regime. Further, the Increased Fee scheme under § 1930(a)(6)(B) was imposed retroactively on these debtors without sufficient notice or warning.

28.

Moreover, it is arbitrary and irrational to apply the Increased Fee scheme retroactively to Chapter 11 debtors in forty-eight states and non-retroactively to those in two other states. This regime effectively requires debtors with pending Chapter 11 cases, other than in Alabama and North Carolina, to pay substantially higher fees for the supervision of bankruptcy proceedings with no basis for such a distinction. This establishes an impermissible disparity between similarly-situated Chapter 11 debtors (and creditors thereof) in Alabama/North Carolina versus those in the remaining forty-eight states.

29.

Plaintiffs bring this case pursuant to the Tucker Act, 28 U.S.C. §1491, which waives sovereign immunity and "provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-74 (Fed. Cir. 1996).  Courts have long recognized such an "illegal exaction" claim - a claim that money was "improperly paid, exacted, or taken from a claimant" in violation of a statute or the Constitution, regardless of whether the statute or the Constitution itself creates an express or implied monetary remedy.[5]  Under the Tucker Act, there is jurisdiction over a Due Process claim when such claim is for illegal exaction.

## NON-CLASS ACTION ALLEGATIONS-COUNT 3
## ALTERNATIVE REQUESTS FOR RELIEF BY THE INDIVIDUAL PLAINTIFFS

30.

In the event that the Court declines to certify either of the classes described in Count 1 or Count 2, the plaintiffs seek relief for themselves under the legal theories enunciated in Counts 1 and 2 and request a money judgment in favor of the plaintiffs against the defendant in the amount of $216,784.69 for the AMG Plaintiffs and $140,845 for the Boegel Plaintiffs.

## THE PLAINTIFFS THEREFORE PRAY THAT THIS COURT:

a.     Certify this action as a class action under Rule 23 of the Rules of the United States Court of Federal Claims;

b.     Declare that 28 U.S.C. § 1930(a)(6-7), or, in the alternative, that 28 U.S.C. §1930(a)(6)(B), is unconstitutional as applied to plaintiffs and those similarly situated;

c.     Order monetary relief to the plaintiffs and those similarly situated in the form of a

---

[5] See n.3, supra.

money judgment in favor of the plaintiffs and those similarly situated against the defendant in the amount of Chapter 11 quarterly fees collected by the defendant from the plaintiffs and those similarly situated, to the extent that those fees exceed the amounts contained in 28 U.S.C. § 1930(a)(6)(A);

d.      Award the plaintiffs and their attorneys their costs, expenses and attorney's fees under 28 U.S.C. §2412 and/or from a common fund; and

e.      For all other and further relief as is justified under the premises.

Alexandria, Louisiana, this 23rd day of May, 2019.

Respectfully submitted,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL, APLC**

By:      /s/ Bradley L. Drell
         Bradley L. Drell  (T.A.)
         Heather M. Mathews
         Chelsea M. Tanner
         Lauren LaRavia
         2001 MacArthur Drive
         P. O. Box 6118
         Alexandria, Louisiana 71307-6118
         Phone: (318) 445-6471 * Fax: (318) 445-6476
         bdrell@goldweems.com

ATTORNEYS FOR THE PLAINTIFFS

-And-

**RANTZ IV, LLC**

By:      /s/ August Rantz, IV
         August Rantz, IV
         101 La Rue France, Ste. 500
         Lafayette, Louisiana 70508
         Phone: (337) 269-9566 * Fax: (337) 269-6375