No. 19-496C
(Judge Campbell-Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ACADIANA MANAGEMENT GROUP,
LLC, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION TO DISMISS

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

CLAUDIA BURKE
Assistant Director

SHARI A. ROSE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-1265
Facsimile: (202) 514-8640
E-mail: Shari.Rose@usdoj.gov

October 7, 2019                          *Attorneys for Defendant*

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................ 1

QUESTIONS PRESENTED ................................................................................. 3

STATEMENT OF THE CASE .............................................................................. 4

    I.     Legal Background ................................................................................ 4

          A.    Statutory Background ............................................................... 4

          B.    Pending Litigation Relating To The 2017 Amendment To
               28 U.S.C. § 1930(a)(6) ............................................................. 7

    II.    Factual Background ............................................................................. 8

          A.    AMG Plaintiffs' Chapter 11 Cases ........................................... 8

          B.    Boegel Plaintiffs' Chapter 11 Cases ....................................... 10

ARGUMENT ....................................................................................................... 8

    I.     Standards Of Review ......................................................................... 11

          A.    Standard For A Motion To Dismiss For Lack Of Subject Matter
               Jurisdiction ............................................................................. 11

          B.    Standard For A Motion To Dismiss For Failure To State A Claim ......... 11

    II.    The Court Is Without Jurisdiction To Entertain Plaintiffs' Claims ..................... 12

          A.    Congress Has Committed Jurisdiction Over Proceedings Arising in
               Cases Under Title 11 To The District Courts ........................... 12

          B.    The Court Does Not Have Jurisdiction Over The Claims Of The AMG
               Plaintiffs Because The Court Cannot Resolve The AMG Plaintiffs'
               Claims Without Reviewing An Order Of The Bankruptcy Court ............. 14

C.      The Court Does Not Have Jurisdiction Over Plaintiffs' Illegal
        Exaction Claim Because 28 U.S.C. § 1930 Does Not, Expressly Or
        By Necessary Implication, Provide For Compensation ............................17

III.    The Complaint Fails To State An Illegal Exaction Claim Upon Which Relief
        May Be Granted ..........................................................................................21

        A.      The 2017 Amendment Does Not Violate The Bankruptcy Clause ........... 21

                1.      The Bankruptcy Clause Applies To Substantive Bankruptcy
                        Laws And Does Not Apply To Other Matters, Such As Quarterly
                        Fees, Which Relate To The Administration Of A Bankruptcy
                        Case ........................................................................................... 21

                2.      28 U.S.C. § 1930 Is Uniform On Its Face ..................................... 23

        B.      The 2017 Amendment Is Not Impermissibly Retroactive, Nor Does It
                Violate The Fifth Amendment ................................................................. 24

CONCLUSION ........................................................................................................ 27

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                      <u>PAGE(S)</u>

*Aerolineas Argentinas v. United States*,
    77 F.3d 1564 (Fed. Cir. 1996) ............................................................. 21

*Allustiarte v. United States*,
    256 F.3d 1349 (Fed. Cir. 2001) ................................................. 14, 16, 17

*American Guaranty Corp. v. United States*,
    401 F.2d 1004 (Ct. Cl. 1968) ............................................................. 15

*Ashton v. Cameron Cty. Water Imp. Dist. No. 1*,
    298 U.S. 513 (1936) ......................................................................... 22

*Athey v. United States*,
    908 F.3d 696 (Fed. Cir. 2018) ........................................................... 12

*Capelouto v. United States*,
    99 Fed. Cl. 682 (2011) ..................................................................... 13

*Continental Ill. Nat. Bank & Tr. Co. v. Chicago, R.I. & P.R. Co.*,
    294 U.S. 648 (1938) ......................................................................... 22

*Cyprus Amax Coal Co. v. United States*,
    205 F.3d 1369 (Fed. Cir. 2000) ......................................................... 19

*Dimare Fresh, Inc. v. United States*,
    808 F.3d 1301 (Fed. Cir. 2015) ......................................................... 12

*Eastport S.S. Corp. v. United States*,
    372 F.2d 1002 (Ct. Cl. 1967) ........................................................... 21

*EPA v. New Orleans Pub. Serv., Inc.*,
    826 F.2d 361 (5th Cir. 1987) ........................................................... 25

*Figueroa v. United States*,
    466 F.3d 1023 (Fed. Cir. 2006) ......................................................... 21

*Fisher v. United States*,
    402 F.3d 1167 (Fed. Cir. 2005) ......................................................... 18

*General Motors Corp. v. Romein*,
    503 U.S. 181 (1992) ......................................................................... 25

iii

*Holley v. United States*,
  124 F.3d 1462 (Fed. Cir. 1997) ............................................................ 11

*Hufford v. United States*,
  87 Fed. Cl. 696 (2009) ...................................................................... 13

*Indium Corp. of Am. v. Semi-Alloys, Inc.*,
  781 F.2d 879 (Fed. Cir. 1985) ............................................................ 12

*In re Buffets, LLC*,
  No. 16-50557-RBK (Bankr. W.D. Tex. Feb. 8, 2019) ............................. 7

*In re Celebrity Home Entm't, Inc.*,
  210 F.3d 995 (9th Cir. 2000) ................................................................ 5

*In re Circuit City Stores, Inc.*,
  No. 08-35653-KRH (Bankr. E.D. Va. July 15, 2019) ............................. 8

*In re Clinton Nurseries, Inc.*,
  No. 17-31897 (JJT) (Bankr. D. Conn. Aug. 28, 2019) ........................... 8

*In re Danny's Markets, Inc.*,
  266 F.3d 523 (6th Cir. 2001) ................................................................ 5

*In re Jamko, Inc.*,
  240 F.3d 1312 (11th Cir. 2001) ............................................................ 5

*In re Life Partners Holdings, Inc.*,
  No. 15-40289-mxm-11 (Bankr. N.D. Tex. Aug. 22, 2019) ..................... 8

*In re Prines*,
  867 F.2d 478 (8th Cir. 1989) ......................................................... 4, 24

*In re Reese*,
  91 F.3d 37 (7th Cir. 1996) .................................................................. 22

*In re Richardson Serv. Corp.*,
  210 B.R. 332 (Bankr. W.D. Mo. 1997) ................................................ 24

*Joshua v. United States*,
  17 F.3d 378 (Fed. Cir. 1994) .............................................................. 14

*Kanemoto v. Reno*,
  41 F.3d 641 (Fed. Cir. 1994) .............................................................. 19

iv

*Laguna Hermosa Corp. v. United States*,
   671 F.3d 1284 (Fed. Cir 2012) ........................................................... 12

*Landgraf v. USI Film Products*,
   511 U.S. 244 (1994) ........................................................................... 25

*McAndrews v. Fleet Bank of Massachusetts*,
   989 F.2d 13 (1st Cir. 1993) ................................................................ 25

*Murdock v. United States*,
   103 Fed. Cl. 389 (2012) ..................................................................... 12

*Nelson v. Welch (In re Repository Techs., Inc.)*,
   601 F.3d 710 (7th Cir. 2010) .............................................................. 13

*Norman v. United States*,
   429 F.3d 1081 (Fed. Cir. 2005) .......................................................... 18

*Peony Park v. O'Malley*,
   121 F. Supp. 690 (D. Neb. 1954) *aff'd*,
   223 F.2d 668 (8th Cir. 1955) .............................................................. 23

*Railway Labor Execs. Ass'n v. Gibbons*,
   455 U.S. 457 (1982) ..................................................................... 21, 22

*Rick's Mushroom Serv. v. United States*,
   521 F.3d 1338 (Fed. Cir. 2008) .......................................................... 11

*Rocky Mtn. Helium, LLC v. United States*,
   841 F.3d 1320 (Fed. Cir. 2016) .......................................................... 12

*Rosenberg v. United States*,
   72 Fed. Cl. 387 (Fed. Cl. 2006) ......................................................... 23

*Trusted Integration, Inc. v. United States*,
   659 F.3d 1159 (Fed. Cir. 2011) .......................................................... 11

*Turner Broadcasting Sys., Inc. v. FCC*,
   520 U.S. 180 (1997) ........................................................................... 26

*United States Trustee v. Gryphon at the Stone Mansion*,
   166 F.3d 552 (3d Cir. 1999) .......................................................... 13, 22

*United States v. Carlton*,
   512 U.S. 26 (1994) ................................................................ 25

*United States. v. Sperry*,
   493 U.S.52 (1989) ................................................................ 26

*United States v. Testan*,
   424 U.S. 392 (1967) ........................................................ 11, 18

*Usery v. Turner Elkhorn Mining Co.*,
   428 U.S. 1 (1976) ................................................................ 25

*U.S. Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*,
   150 F.3d 1233 (10th Cir. 1998) ................................................ 24

*Wood v. Wood (In re Wood)*,
   825 F.2d 90 (5th Cir.1987) .................................................... 13

<u>STATUTES</u>

11 U.S.C. § 1123 ....................................................................... 7

11 U.S.C. § 1129 ....................................................................... 7

11 U.S.C. § 1141 ....................................................................... 7

11 U.S.C. § 101 ....................................................................... 22

28 U.S.C. § 157(a) .................................................................... 13

28 U.S.C. § 586 ........................................................................ 4

28 U.S.C. § 589a ....................................................................... 5

28 U.S.C. § 1334 ................................................................. 12, 13

28 U.S.C. § 1491(a)(1) ............................................................... 17

28 U.S.C. § 1930 ................................................................. passim

Pub. L. No. 106-518 .................................................................... 5

Pub. L. No. 115-72 ................................................................. 6, 24

Pub. L. No. 116-6 ...................................................................... 5

U.S. Const. art. 1, § 8, cl. 4 ........................................................................................ 21

<u>LEGISLATION</u>

H.R. Rep. No. 95-595 (1977) ........................................................................................ 4

H.R. Rep. No. 99-764 (1986) ..................................................................................... 4, 5

H.R. Rep. No. 115-130 (2017) ................................................................................. 6, 26

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ACADIANA MANAGEMENT GROUP,    )
LLC, et al.,                  )
                              )
          Plaintiffs,         )
                              )
     v.                       )          No. 19-496C
                              )          (Judge Campbell-Smith)
THE UNITED STATES,            )
                              )
          Defendant.          )

### DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of

Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court

dismiss the September 3, 2019 second amended complaint filed by plaintiffs, Acadiana

Management Group, LLC, Albuquerque-AMG Specialty Hospital, LLC, Central Indiana-AMG

Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, Houma-AMG Specialty Hospital,

LLC, LTAC of Louisiana, LLC, Las Vegas-AMG Specialty Hospital, LLC, Warren Boegel,

Boegel Farms, LLC, and Three Bo's, Inc. (collectively, plaintiffs) for lack of subject matter

jurisdiction and for failure to state a claim upon which relief may be granted.

### INTRODUCTION

Under 28 U.S.C. § 1930, quarterly fees must be paid in each case under chapter 11 of title

11 of the United States Code to fund the United States Trustee's Program – a component of the

Department of Justice that oversees the administration of bankruptcy cases and works to promote

the integrity and efficiency of the bankruptcy system.  In 2017, Congress amended 28 U.S.C.

§ 1930(a)(6) and temporarily increased the quarterly fees in the largest chapter 11 cases –

including the chapter 11 cases filed by plaintiffs.  The 2017 amendment applied to fees payable

starting with the quarter beginning January 2018.  Consistent with the statute, starting in January 2018, the quarterly fees were calculated at the amended rates in all chapter 11 cases in the 88 districts in which the U.S. Trustee Program operates.  In the six remaining districts (where the functions of the U.S. Trustee are performed by employees of the Judiciary), the amended quarterly fees were not specifically implemented until October 1, 2018, and only then for new cases filed on or after that date.  This difference in implementation was at odds with 28 U.S.C. § 1930(a)(7), under which fees in the six districts are to be equal to those imposed by section 1930(a)(6), and at odds with the long-standing practice, approved by the Judicial Conference, to impose quarterly fees in the amounts specific in 28 U.S.C. § 1930.

Plaintiffs' chapter 11 cases were in U.S. Trustee Program districts, and, beginning with the first quarter of 2018, their quarterly fees were calculated at the rates set by Congress in the 2017 amendment.  Plaintiffs paid the fees and did not raise any challenge to the fees during their bankruptcy proceedings, although many other similarly-situated parties did.  Now that plaintiffs are no longer before the bankruptcy court, they have filed suit in this Court and alleged that the quarterly fees they paid for 2018 were illegally exacted based on the difference in how the 2017 amendment was implemented within and without the U.S. Trustee Program districts.

The Court should dismiss plaintiffs' second amended complaint.  *First*, the Court is without jurisdiction because, under 28 U.S.C. §§ 151, 157(a), and  1334(b), Congress provided the district courts (and, by reference, bankruptcy judges) with jurisdiction over matters arising in cases under title 11 – which includes challenges to quarterly fees under 28 U.S.C. § 1930. Because Congress has not provided for this Court to exercise jurisdiction over matters arising in cases under title 11, the Court is without jurisdiction.

*Second*, the second amended complaint should be dismissed for lack of jurisdiction because the Court cannot resolve plaintiffs' claims without reviewing and potentially altering orders of the bankruptcy courts.  This Court cannot review orders of another court, including bankruptcy courts.

*Third*, the Court is further without jurisdiction over the second amended complaint because 28 U.S.C. § 1930 does not, either expressly or by necessary implication, provide for a monetary remedy – as required for an illegal exaction claim.

*Finally*, even if the Court were to determine that it had jurisdiction over the second amended complaint (and it should not), the Court should dismiss because plaintiffs have failed to state a claim for illegal exaction on which relief may be granted.  Contrary to plaintiffs' allegations, the 2017 amendment did not violate the uniformity requirement of the United States Constitution's Bankruptcy Clause.  The Bankruptcy Clause applies to substantive laws on bankruptcy, not administrative bankruptcy matters, such as quarterly fees.  Even if the uniformity requirement were applicable, the 2017 amendment is a uniform law that applies to all chapter 11 cases.  Differences in implementation by the Executive and Judiciary branches did not – and could not – render Congress's law non-uniform.  In addition, the 2017 amendment was not impermissibly retroactive in violation of the Fifth Amendment's Due Process Clause.  Accordingly, the Court should dismiss the second amended complaint.

<u>QUESTIONS PRESENTED</u>

1.      Whether the Court is without jurisdiction to entertain plaintiffs' claims because a challenge to quarterly fees under 28 U.S.C. § 1930 is a matter arising in cases under title 11 of the United States Code.

- 3 -

2.      Whether the second amended complaint must be dismissed because consideration of the plaintiffs' claims would require the Court to review the bankruptcy courts' decisions.

3.      In the alternative, whether the Court is without jurisdiction over plaintiffs' illegal exaction claims because 28 U.S.C. § 1930 does not, either expressly or by necessary implication, provide for a monetary remedy.

4.      Whether the second amended complaint fails to state a claim for illegal exaction on which relief may be granted because the 2017 amendment to 28 U.S.C. § 1930 did not violate the Bankruptcy Clause and was not impermissibly retroactive in violation of the Fifth Amendment's Due Process Clause.

## STATEMENT OF THE CASE

I.      Legal Background

A.      Statutory Background

The U.S. Trustee Program, a component of the Department of Justice, performs numerous responsibilities under the Bankruptcy Code, thereby "leav[ing] bankruptcy judges 'free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination.'"  *In re Prines*, 867 F.2d 478, 480 (8th Cir. 1989) (quoting H.R. Rep. No. 99-764, at 18 (1986)); *see generally* 28 U.S.C. § 586.  U.S. Trustees exercise a range of enforcement, administrative, and regulatory duties in the bankruptcy system and "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."  H.R. Rep. No. 95-595, at 88 (1977).

The U.S. Trustee Program began as a pilot program in 18 judicial districts, but was later made permanent by Congress and currently operates in 88 of the 94 Federal judicial districts.

The six judicial districts in Alabama and North Carolina remain under a separate, judicially managed "bankruptcy

From the onset, Congress intended that the U.S. Trustee Program be "paid for by the users of the bankruptcy system – not by the taxpayer."  H.R. Rep. No. 99-764, at 22 (1986).  Thus, although Congress funds the Program through appropriations, those appropriations are then offset by fees paid into the U.S. Trustee System Fund (the Fund) in bankruptcy cases.  *See* 28 U.S.C. § 589a.  The Fund's most significant source of revenue is quarterly fees in chapter 11 cases, *see* 28 U.S.C. § 589a(b)(5); the fees are graduated in size according to the amount of quarterly "disbursements," *id.* § 1930(a)(6)(A)-(B).[1]  Prior to 2018, the maximum possible quarterly fee was $30,000, which applied to chapter 11 cases with quarterly disbursements of $30 million or more.  *Id.* § 1930(a)(6)(A).

At first, payment of chapter 11 quarterly fees was required only in districts participating in the U.S. Trustee Program.  In 2000, however, Congress legislated that "[i]n districts that are not part of a United States trustee region" – the six districts in Alabama and North Carolina – "the Judicial Conference of the United States may require the debtor in a case under chapter 11 . . . to pay fees equal to those imposed by [section 1930(a)(6)]."  28 U.S.C. § 1930(a)(7); *see* Pub. L. No. 106-518, § 105, 114 Stat. 2410, 2412 (2000).  The Judicial Conference promptly exercised that authority, approving the imposition of quarterly fees in bankruptcy-administrator

---

[1] The statute does not define "disbursements."  Courts of appeals have interpreted the term broadly to include all payments made by or on behalf of the debtor during the pendency of the bankruptcy case, including payments for "ordinary and necessary business operating expenses."  *In re Jamko, Inc.*, 240 F.3d 1312, 1313 (11th Cir. 2001); *see also, e.g.*, *In re Danny's Markets, Inc.*, 266 F.3d 523, 526 (6th Cir. 2001) (interpreting "disbursements" to include "all . . . payments, including the debtor's day-to-day, post-confirmation operating expenses"); *In re Celebrity Home Entm't, Inc.*, 210 F.3d 995, 998 (9th Cir. 2000) (similar).

districts "in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from

time to time."  Report of the Proceedings of the Judicial Conference of the United States,

September/October 2001, at 46, https://www.uscourts.gov/sites/default/files/2001-09_0.pdf.

For several decades, appropriations for the U.S. Trustee Program were entirely offset by

fees deposited in the Fund.  By 2017, however, the Fund had been nearly depleted "due to

overall declining bankruptcy filings nationwide."  H.R. Rep. No. 115-130, at 7 (2017).

Concerned that exhaustion of the Fund would shift the financial burden from users of the

bankruptcy system to taxpayers at large, Congress elected to bolster the Fund by temporarily

increasing quarterly fees in the largest chapter 11 cases.  *See* Pub. L. No. 115-72, div. B,

§ 1004(a), 131 Stat. 1224, 1232 (2017) (codified at 28 U.S.C. § 1930(a)(6)(B)).  Specifically,

section 1930(a)(6)(B) provides:

> During each of fiscal years 2018 through 2022, if the balance in
> the United States Trustee System Fund as of September 30 of the
> most recent full fiscal year is less than $200,000,000, the quarterly
> fee payable for a quarter in which disbursements equal or exceed
> $1,000,000 shall be the lesser of 1 percent of such disbursements
> or $250,000.

*Id.*  Congress further specified that this amendment "shall apply to quarterly fees payable under

section 1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the

date of enactment of this Act" – *i.e.*, starting with the quarter beginning January 2018.  Pub. L.

No. 115-72, div. B, § 1004(c), 131 Stat. at 1232 (codified at 28 U.S.C. § 1930 note).

As of September 30, 2017, the balance in the Fund was well below the $200 million

threshold identified by section 1930(a)(6)(B).  Accordingly, and consistent with the statute,

starting in January 2018, fees due were calculated at the higher quarterly rates in all chapter 11

cases in U.S. Trustee Program districts in cases in which quarterly disbursements "equal[ed] or

- 6 -

exceed[ed]" $1 million.  28 U.S.C. § 1930(a)(6)(B).  In the six bankruptcy-administrator

districts, however – despite the Judicial Conference's direction to impose quarterly fees "in the

amounts specified" by statute as "amended from time to time," *see supra* p. 6 – the higher fee

schedule was not specifically implemented until October 1, 2018, and only then for new "cases

filed on or after" that date.  Report of the Proceedings of the Judicial Conference of the United

States, September 2018, at 11-12, https://www.uscourts.gov/sites/default/files/2018-

09_proceedings.pdf.

     B.     Pending Litigation Relating To The 2017 Amendment To 28 U.S.C. § 1930(a)(6)

Challenges to the constitutionality of the 2017 amendment to 28 U.S.C. § 1930 have been

made in bankruptcy courts within the Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh

circuits.  To date, four bankruptcy courts have issued decisions on debtors' challenges to the

amendment, all of which are on appeal.

The United States Bankruptcy Court for the Western District of Texas held that the 2017

amendment to section 1930 is unconstitutionally non-uniform and that the statute did not and

could not apply to already-pending chapter 11 cases with confirmed plans.[2]  *In re Buffets, LLC*,

No. 16-50557-RBK (Bankr. W.D. Tex. Feb. 8, 2019), Doc. No. 4209 at 13.  The United States

Court of Appeals for the Fifth Circuit granted the Acting U.S. Trustee for Region 7's petition for

permission to take a direct appeal of the bankruptcy court's order in *In re Buffets*, and the appeal

---

[2] A chapter 11 plan provides for how different classes of creditors will be treated, and must conform to various statutory requirements set forth in the Bankruptcy Code.  *See* 11 U.S.C. § 1123 (setting forth required contents of a plan); 11 U.S.C. § 1129 (setting forth the requirements for plan confirmation); 11 U.S.C. § 1141 (setting forth the effect of plan confirmation).

is currently pending.  *See Hobbs v. Buffets, LLC., et al.*, No. 19-90020 (5th Cir. Aug. 26, 2019),
Doc. No. 00515078991.

The United States Bankruptcy Court for the Eastern District of Virginia held that the
amendment to section 1930 "does not violate the antiretroactivity principle as the law is
substantively prospective," but that the amendment is unconstitutionally non-uniform.  *In re
Circuit City Stores, Inc.*, No. 08-35653-KRH (Bankr. E.D. Va. July 15, 2019), Doc. No. 14223 at
11, 14, appeal pending *sub nom. Fitzgerald v. Siegel*, Case No. 3:19-cv-00536-MHL (E.D. Va.).

The United States Bankruptcy Court for the Northern District of Texas followed the *In re
Buffets* decision and held that the amendment to section  1930 is unconstitutionally non-uniform
and that the statute did not and could not apply to already-pending chapter 11 cases with
confirmed plans.  *In re Life Partners Holdings, Inc.*, No. 15-40289-mxm-11 (Bankr. N.D. Tex.
Aug. 22, 2019), Doc. No. 4405 at 12, appeal pending *sub nom. Neary v. Quilling (In re In re Life
Partners Holdings, Inc.)*, No. 4:19-cv-00707-O (N.D. Tex.).

The United States Bankruptcy Court for the District of Connecticut held that 28 U.S.C.
§ 1930 is uniform on its face and that delay by the Judicial Conference in enforcing the
amendment to section 1930(a)(6) did not render it unconstitutionally non-uniform.  *In re Clinton
Nurseries, Inc.*, No. 17-31897 (JJT) (Bankr. D. Conn. Aug. 28, 2019), Doc. No. 835 at 19, 24-25,
appeal pending, Case Nos. 19-1428, 19-1433 (D. Conn.).

II.     Factual Background

A.     AMG Plaintiffs' Chapter 11 Cases

Plaintiffs Acadiana Management Group, LLC, Albuquerque-AMG Specialty Hospital,
LLC, Central Indiana-AMG Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, Houma-
AMG Specialty Hospital, LLC, LTAC of Louisiana, LLC, and Las Vegas-AMG Specialty

Hospital, LLC, (collectively AMG plaintiffs) filed jointly administered chapter 11 bankruptcy cases in the United States Bankruptcy Court for the Western District of Louisiana in June 2017 and became debtors and debtors-in-possession.  2d Am. Compl. at 4-5; 11 U.S.C. §§ 101(13), 1101(1)

As debtors and debtors-in-possession, the AMG plaintiffs submitted a joint chapter 11 plan of reorganization, which the bankruptcy court confirmed on March 13, 2018.  2d Am. Compl. ¶ 11.  The bankruptcy plan allocated who would be responsible for payment of the debtors' quarterly fees under 28 U.S.C. § 1930(a)(6).  Specifically, the bankruptcy plan provided that the AMG plaintiffs as the "Reorganized Debtors" and their newly formed company (i.e., "NewCo"), which included certain other non-debtor entities, would pay the debtors' quarterly fees for the first two quarters of 2018, and the estates' liquidation trust would pay any remaining quarterly fees:

> 2.2 Treatment of Quarterly Fees. United States Trustee's fees do not require allowance by the Court and both pre-confirmation and post-confirmation UST fees shall be paid timely and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions.  The debtor shall also provide post confirmation monthly disbursement information to the United States Trustee.  NewCo and the Reorganized Debtors shall pay all pre and post-confirmation UST fees for the first and second quarters of 2018, and for any further quarters in any case that remains open other than the lead case.  All such fees arising in the lead case after the Second Quarter shall be an administrative expense of the Liquidation Trust and shall be paid by the Liquidation Trustee from the Liquidation Trust Assets.

Second Immaterially Modified Fourth Amended Chapter 11 Plan of Reorganization (*Acadiana* Plan), *In re Acadiana Mgmt. Group, L.L.C.*, et al., No. 15-50799 (Bankr. W.D. La. Feb. 26, 2018), Doc. No. 759 at 9, 13.  The bankruptcy court confirmed the debtors' bankruptcy plan and entered an order (the confirmation order) creating NewCo, and explicitly making the AMG

- 9 -

plaintiffs (a.k.a., the Reorganized Debtors) responsible for the payment of the debtors quarterly

fees:

> Section 2.2 of the Plan provides that the NewCo and Reorganized
> Debtors, as applicable, shall be responsible for timely payment of
> United States Trustee quarterly fees incurred pursuant to 28 U.S.C.
> § 1930(a)(6) through the second quarter of 2018.  Any fees due as
> of the date of confirmation of the Plan will be paid in full on the
> Effective Date. After confirmation, the Reorganized Debtors and
> NewCo shall pay United States Trustee quarterly fees as they
> accrue until these Chapter 11 Cases, excepting the lead case (No.
> 17-50799), are closed by this Court. The Liquidating Trust shall be
> responsible for quarterly fees of the lead case starting in the third
> quarter of 2018.  The Plan accordingly satisfies section
> 1129(a)(12) of the Bankruptcy Code.

Order Confirming Chapter 11 Plan (Order Confirming *Acadiana* Plan), *In re Acadiana Mgmt.*

*Group, L.L.C.*, *et al.*, No. 15-50799 (Bankr. W.D. La. March 13, 2018), Doc. No. 798 ¶47.  The

confirmation order explained that the bankruptcy court would "retain and shall have exclusive

jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters [] arising in or related to the

Chapter 11 Cases or the Plan," and over anything "that relates to the matters set forth in the

Plan."  *Id.* at ¶ Q.

The AMG plaintiffs paid quarterly fees under 28 U.S.C. § 1930(a)(6)(B) for the first two

quarters of 2018.  2d Am. Compl. ¶ 12.  The AMG plaintiffs' chapter 11 cases were closed in

June 2018 with a final decree.  *Id.* ¶ 11.

B.    Boegel Plaintiffs' Chapter 11 Cases

Plaintiffs Warren L. Boegel, Boegel Farms, LLC, and Three Bo's, Inc. (collectively

Boegel plaintiffs) filed jointly administered chapter 11 bankruptcy cases in the United States

Bankruptcy Court for the District of Kansas in February 2017. 2d Am. Compl. at 5-6.  The

Boegel plaintiffs paid quarterly fees under 28 U.S.C. § 1930(a)(6)(B) during the first two

- 10 -

quarters of 2018.  2d Am. Compl. ¶ 12.  The Boegel plaintiffs' moved for a dismissal of their

cases under 11 U.S.C. § 349, and the cases were dismissed in June 2018.  2d Am. Compl. ¶ 11;

Order Granting Motion to Dismiss Case And Prohibiting Vacation, Nullification And Revocation

Of Prior Orders Of The Court (*Boegel* Dismissal Order),  *In re Three Bo's, Inc*., Case No. 17-

10221 (Bankr. D.  Kan. June 21, 2018), Doc. Nos. 105, 107.

<u>ARGUMENT</u>

I.     <u>Standards Of Review</u>

     A.     <u>Standard For A Motion To Dismiss For Lack Of Subject Matter Jurisdiction</u>

The Court of Federal Claims is a court of specific jurisdiction.  *See Rick's Mushroom*

*Serv. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008).  Although this Court possesses

authority to grant relief against the United States, that authority is capped by the extent to which

the United States has waived its sovereign immunity.  *See United States v. Testan*, 424 U.S. 392,

399 (1967).  In addressing an RCFC 12(b)(1) motion, "determination of jurisdiction starts with

the complaint, which must be well-pleaded in that it must state the necessary elements of the

plaintiff's claim, independent of any defense that may be interposed."  *Holley v. United States*,

124 F.3d 1462, 1465 (Fed. Cir. 1997) (citations omitted).  Plaintiffs "bear the burden of

establishing the court's jurisdiction over their claims by a preponderance of the evidence."

*Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds*

*v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).  "In determining

jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint

and draw all reasonable inferences in favor of the plaintiff."  *Id*. (citing *Henke v. United States*,

60 F.3d 795, 797 (Fed. Cir. 1995)).  In deciding a motion to dismiss for lack of subject matter

jurisdiction under RCFC 12(b)(1), however, the Court may consider evidentiary matters outside the pleadings. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985).

B.    Standard For A Motion To Dismiss For Failure To State A Claim

"A complaint must be dismissed under [RCFC] 12(b)(6) when the facts asserted do not give rise to a legal remedy, or do not elevate a claim for relief to the realm of plausibility." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1288 (Fed. Cir. 2012) (citation omitted).   "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Murdock v. United States*, 103 Fed. Cl. 389, 394 (2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the Court must generally accept the plaintiff's factual allegations as true for purposes of a motion to dismiss, *see Athey v. United States*, 908 F.3d 696, 705 (Fed. Cir. 2018), the Court is "not limited to the four corners of the complaint." *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).   Rather, the Court "may also look to matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record" in ruling on a motion to dismiss. *Id.* (quotation marks omitted); *see also Rocky Mtn. Helium, LLC v. United States*, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

II.    The Court Is Without Jurisdiction To Entertain Plaintiffs' Claims

A.    This Court Does Not Possess Jurisdiction Over Claims Arising In Cases Under
      Title 11

Under 28 U.S.C. § 1334(b), Congress granted the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to

cases under title 11."  28 U.S.C. § 1334(b); *see also* 28 U.S.C. § 157(a) ("Each district court may

provide that any or all cases under title 11 and any or all proceedings arising under title 11 or

arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the

district.").  Through 28 U.S.C. § 1334(b), Congress granted the district courts concurrent

jurisdiction over certain matters arising in or related to title 11 cases that would otherwise be

subject to the exclusive jurisdiction of another court.  As this Court has previously recognized,

Congress's grant of concurrent jurisdiction under § 1334(b) did not give this Court jurisdiction

over civil proceedings arising under title 11, or arising in or related to cases under title 11.  *See*

*Hufford v. United States*, 87 Fed. Cl. 696, 702–03 (2009); *Capelouto v. United States*, 99 Fed.

Cl. 682, 691 (2011).

"Proceedings 'arising in' bankruptcy are 'administrative matters that arise *only* in

bankruptcy cases.'"  *Nelson v. Welch (In re Repository Techs., Inc.)*, 601 F.3d 710, 719 (7th Cir.

2010) (citation omitted) (court's emphasis); *United States Trustee v. Gryphon at the Stone*

*Mansion*, 166 F.3d 552, 556 (3d Cir. 1999) ("Proceedings 'arise in' bankruptcy if they have no

existence outside of the bankruptcy."); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th

Cir.1987) (same).  A claim relating to quarterly fees under 28 U.S.C. § 1930 is a claim that

"arises in" bankruptcy and would not exist but for filing a bankruptcy case.  *Gryphon at the*

*Stone Mansion*, 166 F.3d at 556; 28 U.S.C. § `1930(a)(6)(A) ("The parties commencing a case

under title 11 shall pay . . . a quarterly fee [] to the United States trustee . . . in each case under

chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted

or dismissed, whichever occurs first.").  As such, this Court is without jurisdiction to entertain

plaintiffs' claims.

Plaintiffs could have raised their challenge to the quarterly fees in their bankruptcy court proceedings prior to paying the increased fees – as other debtors have done. *See supra* pg. 7-8. Instead, plaintiffs paid the fees and continued to receive the protections and benefits of a chapter 11 bankruptcy case. Plaintiffs cannot now sidestep the consequences of their failure to raise their challenge in a court with jurisdiction over their claim by reframing their challenge as an illegal exaction under the Tucker Act. A claim relating to quarterly fees under 28 U.S.C. § 1930 is a claim that "arises in" bankruptcy – a matter over which this Court lacks jurisdiction. As such, the Court should dismiss plaintiffs' second amended complaint.

B.   The Court Does Not Have Jurisdiction Over The Complaint Because The Court Cannot Resolve Plaintiffs' Claims Without Reviewing Bankruptcy Court Orders

For similar reasons, dismissal of the second amended complaint is also warranted because the Court cannot resolve plaintiffs' claims without reviewing orders entered by the bankruptcy court – orders that, by their terms, arise in bankruptcy. This court does not have jurisdiction to review decisions of the bankruptcy court. *See Allustiarte v. United States*, 256 F.3d 1349, 1351–52 (Fed. Cir. 2001); *see also Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994) ("[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts.").

The AMG plaintiffs' bankruptcy plan addressed quarterly fees under 28 U.S.C. § 1930(a)(6) and provided that "both pre-confirmation and post-confirmation UST fees shall be paid timely and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions." *Acadiana* Plan, at 13. The plan also specifically provided that "NewCo and the Reorganized Debtors shall pay all pre and post-confirmation UST fees for the first and second quarters of 2018, and for any further quarters in any case that remains open other than the

- 14 -

lead case." *Id.* The bankruptcy court's confirmation order recognized that the plan provided that "the NewCo and Reorganized Debtors, as applicable, shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) through the second quarter of 2018." Order Confirming *Acadiana* Plan ¶ 47. Based on the plan's representations regarding the payment of quarterly fees – which were submitted and willingly agreed to by the AMG plaintiffs – the bankruptcy court determined that "[t]he Plan accordingly satisfies section 1129(a)(12) of the Bankruptcy Code." *Id.*

The AMG plaintiffs' plan and confirmation order post-date Congress' 2017 amendment to section 1930(a)(6). Thus, when the confirmation order was entered, the AMG plaintiffs knew they were not only obligated to pay the quarterly fees as set forth in 28 U.S.C. § 1930(a)(6), but obligated to pay the quarterly fee amounts Congress established in the 2017 amendment. The AMG plaintiffs now complain that their payments under the plan were unlawful and that they are entitled to a monetary remedy; this argument, however, directly contradicts the confirmation order and the bankruptcy court's finding that the plan "accordingly satisfies section 1129(a)(12) of the Bankruptcy Code." Because the bankruptcy court's order specifically orders the payment of quarterly fees under section 1930(a)(6), the AMG plaintiffs' remedy if they think that order was unlawful (or if they seek clarification as to what it requires) was to seek reconsideration in the bankruptcy court or to appeal the bankruptcy court's order – not to collaterally attack the order in this Court. *See American Guaranty Corp. v. United States*, 401 F.2d 1004, 1010-1011 (Ct. Cl. 1968) (plaintiff who paid referee's fees in its bankruptcy proceeding and then sought to recover fees paid in the United States Court of Claims "chose not to take advantage of the proper avenue of redress within the bankruptcy proceeding itself" and was "estopped from collaterally challenging the judicially confirmed plan of arrangement" in the Court of Claims).

In short, this Court cannot consider whether the quarterly fees paid by the AMG plaintiffs were unlawful without reviewing, and potentially altering, the bankruptcy court's confirmation order.  Because this Court is without jurisdiction to review orders of the bankruptcy court, *Allustiarte*, 256 F.3d at 1351–52, the Court should dismiss the claims of the AMG plaintiffs for lack of jurisdiction, particularly when the bankruptcy court has ruled that it retains jurisdiction over all matters "arising in or related to" the AMG plaintiffs' bankruptcy case and plan, and over anything "that relates to the matters set forth in the Plan."  Order Confirming *Acadiana* Plan ¶ Q.

Similarly, the Court cannot consider the claims of the Boegel plaintiffs without reviewing an order of the bankruptcy court.  After paying quarterly fees as mandated by the 2017 amendment, the Boegel plaintiffs moved for dismissal of their bankruptcy cases and represented to the court that "[c]ause exists to allow dismissal of these bankruptcy cases, as there are very limited assets for reorganization purposes . . . ."  Debtors' Motion for Dismissal of Bankruptcy Cases and Order Prohibiting Vacation, Nullification, and Revocation of Prior Orders of the Court, *In re Boegel Farms, LLC*, No. 17-10222-11 (Bankr. D. Kan. May 25, 2018), Doc. No. 261.  The motion explained that sales of assets provided sufficient funds to satisfy two creditors; regarding the remaining creditors, the Boegel plaintiffs stated that "Debtors have either negotiated or are in the process of separately negotiating a separate course of treatment for those remaining creditors."  *Id.*  The bankruptcy court granted the motion and entered an order approving dismissal of the bankruptcy cases after finding that cause existed because "there are very limited assets for reorganization purposes."  *Boegel* Dismissal Order ¶ 5.  Now, after choosing not to raise their challenge regarding the quarterly fees in the bankruptcy proceedings, the Boegel plaintiffs allege that, had they only paid the pre-2017 amendment fees, their bankruptcy estates would have included an additional $140,845.  2d Am. Compl. ¶ 12.  As

- 16 -

property of the bankruptcy estates, the $140,845 would have been under the exclusive jurisdiction of the bankruptcy court, 28 U.S.C. § 1334(e)(1), and could potentially have been available to the Boegel plaintiffs' creditors before dismissal.

To consider the Boegel plaintiffs' current claims would require this Court to review the bankruptcy court's dismissal order – an order that was granted, in part, because "there are very limited assets for reorganization purposes." *Boegel* Dismissal Order ¶ 5. Further, because the relief sought by the Boegel plaintiffs may include monies that should rightfully belong to their bankruptcy estates, this Court would have to review and possibly reconsider other determinations made by the bankruptcy court – including which bankruptcy creditors may be entitled to the amounts sought by the Boegel plaintiffs in the second amended complaint. Such a review would impermissibly interfere with the determinations of another Article I Federal Court, and the Court should dismiss the Boegel plaintiffs' claims. *See Allustiarte*, 256 F.3d at 1351–52.

C.     The Court Does Not Have Jurisdiction Over Plaintiffs' Complaint Because 28 U.S.C. § 1930 Does Not, Expressly Or By Necessary Implication, Provide For A Monetary Remedy

In the alternative, plaintiffs' second amended complaint should be dismissed for lack of jurisdiction under RCFC 12(b)(1) because 28 U.S.C. § 1930 does not, expressly or by necessary implication, provide Chapter 11 debtors with a monetary remedy for an allegedly unlawful assessment of quarterly fees.

Pursuant to the Tucker Act, the Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act is "a jurisdictional statute; it does not create

- 17 -

*any* substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976) (emphasis added) (citation omitted). To pursue a substantive right pursuant to the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages . . . . [T]hat source must be 'money-mandating.'" *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citations omitted). To demonstrate an illegal exaction, a plaintiff must show that money has been "improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005). Because the Tucker Act does not provide any substantive rights, "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'" *Id.* (quoting *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)). Thus, in order to invoke Tucker Act jurisdiction in this case, plaintiffs must demonstrate that a source of law provides, either expressly or by necessary implication, a cause of action for a monetary remedy for an unlawful quarterly-fee assessment.

Plaintiffs cannot make this showing. There is no language in 28 U.S.C. § 1930 that expressly provides chapter 11 debtors with a right to compensation for an allegedly unlawful assessment of quarterly fees. Nor does 28 U.S.C. § 1930 provide a cause of action for a monetary remedy by "necessary implication." *Norman*, 429 F.3d at 1095. The statute simply establishes that quarterly fees "shall be paid . . . in each case under chapter 11 of title 11" and then sets the fee amounts to be paid. 28 U.S.C. § 1930(a)(6)(A), (B). Nothing in 28 U.S.C.

- 18 -

§ 1930 "leads to the ineluctable conclusion that the [statute] provides a cause of action with a monetary remedy." *See Cyprus Amax*, 205 F.3d at 1373.

In contrast, in *Cyprus Amax*, the Federal Circuit examined the Export Clause of the Constitution and determined that the clause provides, by necessary implication, a cause of action with a monetary remedy. *Id.* As the Federal Circuit explained, the Export Clause "strictly prohibits any tax or duty, discriminatory or not, that falls on exports during the course of exportation." *Id.* ("[n]o Tax or Duty shall be laid on Articles exported from any State"). The court concluded that the "[t]he necessary implication of the Export Clause's unqualified proscription is that the remedy for its violation entails a return of money unlawfully exacted." *Id.* Here, there was no proscription on Congress's authority to establish fees for ensuring that the U.S. Trustee Program is paid for by the users of the bankruptcy system and not by the taxpayer. In addition, plaintiffs paid fees in the amount set by Congress – there is no allegation that plaintiffs were required to pay quarterly fees in excess of the amounts established by Congress. Thus, 28 U.S.C. § 1930 does not necessarily imply that Congress intended to give chapter 11 debtors a cause of action for a monetary remedy for an unlawful exaction of quarterly fees.

Congress's decision not to provide a money-mandating remedy in this Court is further demonstrated by the fact that Congress expressly provided that any refunds of fees should be made through specific funding sources. In appropriations bills, Congress has provided that deposits to the U.S. Trustee System Fund and amounts appropriated are available to pay refunds due depositors. *See, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, at 103-04 (2019). That Congress intended refunds to be made out of specific pots of money shows that Congress did not intend bankruptcy debtors to pursue a "naked money judgment" in this Court. *Cf. Kanemoto v. Reno*, 41 F.3d 641, 645 (Fed. Cir. 1994).

- 19 -

In the second amended complaint, plaintiffs do not identify any language in 28 U.S.C. § 1930 that, either expressly or by necessary implication, indicates that Congress intended to provide a cause of action for a monetary remedy relating to quarterly fees.  Instead, plaintiffs erroneously contend that *Norman* stands for the proposition that the Tucker Act permits the Court to exercise jurisdiction over an illegal exaction claim "regardless of whether the statute or the Constitution itself creates an express or implied monetary remedy."  *See* 2d Am. Compl. ¶ 22, n.5 (citing *Norman*, 429 F.3d at 1095).  But, as discussed, the Federal Circuit in *Norman* held that "[t]o invoke Tucker Act jurisdiction over an illegal exaction claim, a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by 'necessary implication,' that 'the remedy for its violation entails a return of money unlawfully exacted.'"  *Id.* (quoting *Cyprus Amax*, 205 F.3d at 1373).

The Court should also reject plaintiffs' contention that "in any event, Article 1, § 8, of the Constitution of the United States is so inextricably intertwined with money – given that tax and bankruptcy's primary object is financial – that this provision of the Constitution should be interpreted as a money-mandating provision of the law."  2d Am. Compl. ¶ 22.  The relevant question is not whether the source of law plaintiffs rely on concerns money, but whether the law creates a right to a monetary remedy.  Because the Bankruptcy Clause, art. 1, § 8, cl. 4, is not money-mandating, plaintiffs cannot rely on the Bankruptcy Clause to invoke this Court's jurisdiction under the Tucker Act.

Because plaintiffs cannot demonstrate that 28 U.S.C. § 1930 provides, either expressly or by necessary implication, a cause of action for a monetary remedy, the Court should dismiss plaintiffs' claims for lack of jurisdiction.

III.     The Complaint Fails To State An Illegal Exaction Claim Upon Which Relief May Be
         Granted

Even if plaintiffs could establish that the Court has jurisdiction over their claims (which

they cannot), the Court should dismiss plaintiffs' second amended complaint because it fails to

state an illegal exaction claim upon which relief may be granted.  As discussed above, an "illegal

exaction" involves money "improperly paid, exacted, or taken from the claimant in contravention

of the Constitution, a statute, or a regulation."  *Eastport S.S. Corp. v. United States*, 372 F.2d

1002, 1007 (Ct. Cl. 1967).  To establish an illegal exaction here, therefore, plaintiffs must show

that (1) money was improperly paid to the Government, and (2) the 2017 amendment of

section 1930(a) violated the Constitution.  *See Aerolineas Argentinas v. United States*, 77 F.3d

1564, 1574 (Fed. Cir. 1996).  Plaintiffs cannot establish that the challenged fees violated the

Constitution, a statute, or a regulation, and their claims should be dismissed.  *See, e.g.*, *Figueroa

v. United States*, 466 F.3d 1023, 1032 (Fed. Cir. 2006) (affirming a Rule 12 dismissal of an

illegal exaction claim where patent fees were found to be constitutionally permissible).

A.     The 2017 Amendment Does Not Violate The Bankruptcy Clause

1.     The Bankruptcy Clause Applies To Substantive Bankruptcy Laws And
       Does Not Apply To Other Matters, Such As Quarterly Fees, Which Relate
       To The Administration Of A Bankruptcy Case

The Bankruptcy Clause empowers Congress to "[t]o establish . . . uniform Laws on the

subject of Bankruptcies throughout the United States."  U.S. Const. art. 1, § 8, cl. 4.  To be

subject to the uniformity requirement of the Bankruptcy Clause, a law must be one "on the

subject of Bankruptcies."  *Id.*  The Supreme Court has defined "bankruptcy" as the "'subject of

the relations between [a] . . . debtor and his creditors, extending to his and their relief.'"  *Railway

Labor Execs. Ass'n v. Gibbons,* 455 U.S. 457, 466 (1982) (quoting *Wright v. Union Cent. Life*

- 21 -

*Ins. Co.*, 304 U.S. 502, 513-514 (1938)); *Continental Ill. Nat. Bank & Tr. Co. v. Chicago, R.I. & P.R. Co.*, 294 U.S. 648, 673 (1938) (recognizing that laws that "contemplate an adjustment of a failing debtor's obligations" are "laws on the subject of bankruptcies"); *see also Ashton v. Cameron Cty. Water Imp. Dist. No. 1*, 298 U.S. 513, 536-37 (1936) (explaining that the Court's consistent reading of the Bankruptcy Clause is that it says, in substance: "Congress shall have power to establish uniform laws on the subject of any person's general inability to pay his debts throughout the United States.") (Cardozo, J., dissenting) (quotation marks omitted).

Thus, the Bankruptcy Clause applies to *substantive* bankruptcy laws, such as the bankruptcy laws set forth in title 11 of the U.S. Code.  11 U.S.C. §§ 101 *et seq.*; *see In re Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (holding Bankruptcy Clause forbids "arbitrary regional differences in the provisions of the Bankruptcy Code").  Because the Bankruptcy Clause applies to substantive bankruptcy laws, any limits on Congress's authority resulting from the clause's uniformity requirement also only applies to substantive bankruptcy laws.

28 U.S.C. § 1930(a), as amended in 2017, is not a substantive bankruptcy law – it does not alter substantive bankruptcy law or govern the relations between creditor and debtor.  *See Gibbons*, 455 U.S. at 466; *Reese*, 91 F.3d at 39-40; *cf. Gryphon at Stone Mansion, Inc.*, 166 F.3d at 557 ("Congress' mandate requiring payment of post-confirmation quarterly fees is not an effort to alter the terms of pre-existing debts; rather, it creates a new expense that did not exist before the plan was confirmed.") (internal quotations omitted).  Rather, section 1930(a) is a fee provision that provides a funding mechanism for the efficient administration of bankruptcy matters.  Thus, section 1930(a), as amended in 2017, is not subject to the uniformity requirement of the Bankruptcy Clause.

2.      28 U.S.C. § 1930 Is Uniform On Its Face

Even if the Bankruptcy Clause applies to 28 U.S.C. § 1930, plaintiffs cannot demonstrate that the statute, as amended, violates the Bankruptcy Clause because 28 U.S.C. § 1930 is, on its face, a uniform law.  The statute sets a graduated amount of fees for *all* cases under chapter 11, and the 2017 amendment governs fees in all chapter 11 cases with quarterly disbursements equal to or exceeding $1 million.  28 U.S.C. § 1930(a)(6), (7).

In the second amended complaint, plaintiffs do not allege that 28 U.S.C. § 1930 is non-uniform on its face.  Instead, plaintiffs allege that 28 U.S.C. § 1930(a)(6), (7) is unconstitutional under the Bankruptcy Clause "as applied to debtors whose Chapter 11 bankruptcy cases were filed before October 1, 2018."  2d Am. Compl. ¶ 17.  Thus, plaintiffs allege that 28 U.S.C. § 1930 is non-uniform in violation of the Bankruptcy Clause based on differences in how the statute, as amended in 2017, was implemented by the U.S. Trustees in the 88 districts within the U.S. Trustee system, and the bankruptcy administrators in the 6 districts outside the U.S. Trustee system.  The Bankruptcy Clause, however, applies to *laws*, *i.e.*, acts of Congress.  U.S. Const. art. 1, § 8, cl. 4.  A law cannot be rendered "non-uniform" based on actions of members of the Executive or Judiciary branches in implementing the law.  *Cf. Rosenberg v. United States*, 72 Fed. Cl. 387, 395-96 (Fed. Cl. 2006) (holding that complaint alleging that IRS engaged in "*ultra vires* and nonuniform collection*" of a tax did not allege a violation of the tax uniformity clause, U.S. Const. art. I, § 8, cl. 1, because "[t]he Uniformity Clause . . . is a limitation on legislative, not executive, action"); *Peony Park v. O'Malley*, 121 F. Supp. 690 (D. Neb. 1954) (rejecting tax uniformity challenge where statute was uniform but enforcement was not), *aff'd*, 223 F.2d 668 (8th Cir. 1955).  Accordingly, plaintiffs have failed to state a claim on which relief may be granted because, even if the Bankruptcy Clause applies to 28 U.S.C. § 1930, the statute, as

amended, is a uniform law enacted by Congress, and the alleged failure of the Judicial

Conference to enforce § 1930 does not render it unconstitutionally non-uniform.

B.     The 2017 Amendment Is Not Impermissibly Retroactive, Nor Does It Violate The Fifth Amendment

Plaintiffs have further failed to state an illegal exaction claim on which relief may be

granted because the 2017 amendment to 28 U.S.C. § 1930 is not retroactive and its application to

cases pending at the time of the enactment does not violate the Fifth Amendment's Due Process

Clause.

Congress expressly specified that the amended fees would begin to apply *after*

enactment:  "The amendments made by this section shall apply to quarterly fees payable under

section 1930(a)(6) . . . for disbursements made in any calendar quarter that begins on or after the

date of enactment of this Act."  Pub. L. No. 115-72, div. B, § 1004(c), 131 Stat. at 1232 (codified

at 28 U.S.C. § 1930 note).  Thus, the amendment is entirely prospective – it only applies in open

chapter 11 cases (regardless of when the case was filed) to disbursements made more than nine

weeks after the amendment was enacted.  *See U.S. Trustee v. CF & I Fabricators of Utah, Inc.*

*(In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1237 (10th Cir. 1998) (holding that

1996 amendment to section 1930(a)(6) imposing quarterly fees post-confirmation is not

retroactive); *Prines*, 867 F.2d at 485 (holding quarterly fees "operates only prospectively"); *In re*

*Richardson Serv. Corp.*, 210 B.R. 332, 335 (Bankr. W.D. Mo. 1997) ("The amendment only

triggers prospective assessment of fees from the amendment's effective date until entry of the

final decree.").

To the extent that plaintiffs contend that the 2017 amendment is impermissibly

retroactive when applied to cases pending at the time of enactment, plaintiffs are incorrect.  A

statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994) (citation omitted).  Nor is a law retroactive simply because its application requires some reference to antecedent facts.  *EPA v. New Orleans Pub. Serv., Inc.*, 826 F.2d 361, 365 (5th Cir. 1987) (holding that law altering classification of transformers for purposes of future matters is not retroactive).  "[A] statute may modify the legal effect of a present status or alter a preexisting relationship without running up against the retroactivity hurdle."  *McAndrews v. Fleet Bank of Massachusetts*, 989 F.2d 13, 16 (1st Cir. 1993).

"The key lies in how the law interacts with the facts.  So long as the neoteric law determines status solely for the purposes of future matters, its application is deemed prospective."  *Id.*  The 2017 amendment does not backdate collection of increased fees from the date a case was filed or the date a plan was confirmed.  The amendment only triggers prospective assessment of the increased fees from the amendment's effective date until entry of the final decree.  Thus, the amendment does not operate retroactively.

Even if the 2017 amendment had retroactive application, it would not violate the Due Process Clause.  The constitutional restraint upon enacting retroactive civil legislation is a "modest" one.  *Landgraf*, 511 U.S. at 272.  Laws adjusting the burdens and benefits of economic life are presumed to be constitutional and the burden is on the party complaining of a due process violation to establish that Congress has acted in an arbitrary way.  *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976).  As long as there is a lawful legislative purpose furthered by rational means, economic legislation meets the test of due process.  *General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992); *United States v. Carlton*, 512 U.S. 26 (1994) (upholding

- 25 -

amendment to estate tax deduction that operated retroactively).

In addition, "courts must accord substantial deference to the predictive judgments of Congress." *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) (internal quotation marks omitted). This deference stems from the different institutional competencies and roles of the courts and Congress. Congress as an institution is best equipped to amass and evaluate data bearing on legislative questions. *Id*.

The Supreme Court has held that "[i]t is surely proper for Congress to legislate retrospectively to ensure that costs of a program are borne by the entire class of persons that Congress rationally believes should bear them." *United States. v. Sperry*, 493 U.S. 52, 64(1989). Congress exercised its legislative expertise here in setting quarterly fees to fund the cost of providing the bankruptcy system. That decision was not arbitrary or irrational.

Congress enacted the 2017 amendment to collect sufficient funds to fully offset appropriations for the U.S. Trustee Program, as well as the costs of 18 bankruptcy judgeships, so that ordinary taxpayers would not have to bear those costs. H.R. Rep. No. 115-130, at 8. Congress acted rationally in applying the temporary fee increase in all pending cases, rather than only in cases filed after its effective date, because application to all pending cases spreads the costs among all of the larger chapter 11 debtors using the bankruptcy system, instead of making comparatively fewer debtors shoulder the burden.

In sum, plaintiffs have failed to state a claim on which relief may be granted because application of the 2017 amendment to cases pending was not impermissibly retroactive, nor was it a violation of the Due Process Clause of the Fifth Amendment.

<u>CONCLUSION</u>

For these reasons, the United States respectfully requests that the Court dismiss plaintiffs'

second amended complaint.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

s/ Shari A. Rose
SHARI A. ROSE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division, Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 305-1265
Facsimile: (202) 514-8640
E-mail: Shari.Rose@usdoj.gov

October 7, 2019                              *Attorneys for Defendant*

- 27 -