**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ACADIANA MANAGEMENT GROUP, LLC, et al, | ) ) | Case No. 19-496 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Patricia E. Campbell-Smith |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' SUR-REPLY**

NOW INTO COURT, through undersigned counsel, come Acadiana Management Group, LLC, Albuquerque-AMG Specialty Hospital, LLC, Central Indiana-AMG Specialty Hospital, LLC, LTAC Hospital of Edmond, LLC, Houma-AMG Specialty Hospital, LLC, LTAC of Louisiana, LLC, Las Vegas-AMG Specialty Hospital, LLC, Warren Boegel, Boegel Farms, LLC, and Three Bo's, Inc., plaintiffs herein, who respectfully respond to *Defendant's Reply in Support of Its Motion to Dismiss* [Doc. 26] (the "Reply") filed by the United States (the "Government") as follows:

**A.   "Money-Mandating" Statutory Predicate Exists for this Court to Exercise Jurisdiction over Plaintiffs' Illegal Exaction Claims, and the Government Has Acknowledged Same.**

In its Reply, the Government erroneously argued that a "money-mandating" source must arise exclusively from 28 U.S.C. § 1930, notwithstanding that:

> **. . . both this court and the Federal Circuit have found Tucker Act jurisdiction in cases in which the money-mandating "separate source of substantive law" was a statutory scheme rather than a single statutory provision**. *See, e.g. El–Sheikh v. United States*, 177 F.3d 1321, 1323–24 (Fed.Cir.1999) (finding the "Act of Congress" needed for Tucker Act jurisdiction in a combination of 29 U.S.C. § 203(e)(2) and 29 U.S.C. § 216(b)); *Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, 667–68 (1965) (finding a statute mandating the payment of money in a combination of sections 7122 and 7809 of the Internal Revenue Code). **Thus, the Court concludes that separate statutory provisions can be read together to create a money-mandating statutory scheme sufficient to create jurisdiction under the Tucker Act.**

*Sharp v. United States*, 80 Fed. Cl. 422, 427 (2008) (emphasis added).  This Court recently reaffirmed this notion, as follows:

> To meet the requirement of suing under a money-mandating statute or regulation, plaintiffs must present a claim that may allege a violation of a statute that expressly requires payment. **A claim may also meet the legal threshold even if it adds links to the interpretive chain between the provision violated and the provision requiring payment**. For example, a statute authorizing a certain payment, but leaving the conditions for payment to the regulator's discretion, may be rendered mandatory and nondiscretionary when read together with its implementing regulations that define the conditions for the payment. *See, e.g., Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006). **Multiple interrelated provisions may be read together to make out a money-mandating statutory "scheme."** *See Sharp v. United States*, 80 Fed. Cl. 422, 427 (2008) (rejecting the government's argument that the Tucker Act's reference to a singular "Act" of Congress requires a stand-alone provision that is money-mandating).

*Szuggar v. United States*, 145 Fed. Cl. 331, 335 (2019) (emphasis added).

In another pending matter regarding the UST quarterly fee increase, the Department of Justice, Executive Office for United States Trustees, and the Department of Justice, Office of the United States Trustee, **have acknowledged the existence of a statutory monetary remedy**: "MF Global [Debtor] does not need setoff or injunctive relief in any event **because the statute appropriating funds to the United States Trustee Program addresses refunds**." Defendants' Motion for Summary Judgment, *MF Global Holdings Ltd. v. Harrington, et al.*, Adv. Proc. No. 19-01379 (MG), Doc. 13, at 37-38 (Bankr. S.D.N.Y. Nov. 21, 2019) (emphasis added) (citing the Consolidated Appropriations Act, 2019, Pub. L. 116-6, 133 Stat. 13, 103-04 (stating "[f]or necessary expenses of the United States Trustee Program, as authorized, $226,000,000, to remain available until expended: *Provided*, That, notwithstanding any other provision of law, deposits to the United States Trustee System Fund and amounts herein appropriated shall be available in such amounts as may be necessary to pay refunds due depositors[.]")); *see also* 28 U.S.C.A. § 589a.

The Government in *MF Global* further acknowledged:

> **Should MF Global prevail on its claim that the quarterly fees were unlawful and that it is entitled to a monetary remedy through all levels of review, the government will refund any overpayments to MF Global. Congress authorized payments of refunds from (1) deposits to the System Fund and (2) annual appropriations for the necessary expenses of the United States Trustee Program, in its most recent annual appropriation law**. *Id.* The annual appropriation for 2019 was $226 million, *id.*, and the Fund balance as of September 30, 2019 approached $135 million. *See* Dept. of Justice, U.S. Trustee Program, Chapter 11 Quarterly Fees https://www.justice.gov/ust/chapter-11-quarterly-fees. **The US Trustee does not anticipate any dispute about the amount MF Global might recover if the quarterly fees were held to be unlawful and if a monetary remedy were ultimately ordered**.

*Id*. at p. 38 (emphasis added) (footnote omitted). It is inconsistent for the Government, in effort to deny the injunctive relief sought in *MF Global*, to assert that a statutory monetary remedy exists, all while contemporaneously maintaining that there is no money-mandating source sufficient to support jurisdiction in this Court.

This inconsistency may ultimately have legal effect. While there has been no ruling on the summary judgment motion in the *MF Global* matter, judicial estoppel may ultimately preclude the argument suggested by the Government in this case. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007). The *Transclean* Court explained:

> "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. The underlying purpose of the doctrine is 'to protect the integrity of the judicial process.' " *Hossaini v. W. Mo. Med. Ctr.*, 140 F.3d 1140, 1142–43 (8th Cir.1998) (citations omitted); *see also Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 n. 1 (Fed.Cir.1998) (collecting cases and other relevant authority). Judicial estoppel is an equitable doctrine that may be invoked by a court at its discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The Supreme Court recently acknowledged the viability of the doctrine and identified several non-exclusive factors that guide a court's decision whether to apply judicial estoppel: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent

>court determinations"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808.

*Id*. (concluding that "judicial estoppel may be applied to the [issue], whether considered a legal conclusion or question of fact").

Clearly, the remedy for illegal exaction under Section 1930 "'entails a return of money unlawfully exacted.'" *See Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citing *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000)).[1] The language of the 2019 Appropriations Act, which requires that "***notwithstanding any other provision of law***, deposits to the United States Trustee System Fund and amounts herein appropriated ***shall*** be available in such amounts as may be necessary to pay ***refunds*** due depositors," is mandatory, and requires "refunds," or a return of funds due to depositors, such as plaintiffs and certain other Chapter 11 debtors who paid fees found unconstitutional or unlawful otherwise. *See* Consolidated Appropriations Act, 2019, Pub. L. 116-6, at 103-04 (emphasis added). The amount of "refunds due" will be definitive, given the statutory original and increased fee formulas, themselves imposed by Section 1930(a)(6). Thus, if sufficient deposits and appropriations are available to fully refund the overpayments pursuant to statutory formula – which they "shall be," according to the 2019 Appropriations Act – and the USTP refuses to make the payments to depositors, the Government

---

[1] Neither of these cases involved an alleged "money-mandating statutory scheme" or statutory linkage, which as held by numerous decisions cited herein, may provide jurisdiction under the Tucker Act. *Norman* involved a land "exaction," in alleged contravention of Public Law No. 102-104, but the statute was deemed "too attenuated" from the allegedly illegal re-delineation of plaintiffs' property. *See* 429 F.3d. at 1096. The *Cyprus Amax* Court held that the Export Clause of the U.S. Constitution (art. I, 9, cl. 5) provides a monetary remedy and is "self-executing," such that such that the party could "invoke jurisdiction under the Tucker Act through a constitutional provision without first complying with the tax refund statute." 205 F.3d at 1373-75.

would breach a money-mandating duty.[2]

The Government's contention that a "money-mandating" source must arise exclusively from 28 U.S.C. § 1930 also overlooks the well-established principle that "[a]n illegal exaction claim may be maintained where 'the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant **in contravention of the Constitution** . . . .'" *N. California Power Agency v. United States*, 122 Fed. Cl. 111, 115 (2015) (emphasis added) (citing *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996)).  Plaintiffs challenge 28 U.S.C. § 1930(a)(6-7) as a "Congressionally enacted scheme" that is "either a non-uniform tax or bankruptcy law pursuant to Article I, §8 of the Constitution" [Doc. 17, p. 12, paragraph18], and have asserted that this Constitutional provision, which includes both the Uniformity Clause[3] and Bankruptcy Clause,[4] "should be interpreted as a money-mandating provision of the law." [Doc. 17, p. 15, paragraph 22].  As this Court has observed:

> No court has resolved the issue of whether the Uniformity Clause is money-mandating.  Indeed the Supreme Court's treatment of the Uniformity Clause

---

[2] Plaintiffs still maintain that no explicit provision for money damages for illegal exaction is required. Further, even absent any appropriations act, a monetary remedy is implied. "To the extent that the Government would demand an explicit provision for money damages to support every claim that might be brought under the Tucker Act, it would substitute a plain and explicit statement standard for the less demanding requirement of fair inference that the law was meant to provide a damages remedy for breach of a duty." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 477, 123 S. Ct. 1126, 1134, 155 L. Ed. 2d 40 (2003). Stated differently, "[the court] asks what would be the explicit or implicit remedy for the Government's violation of the statute." *Northern California Power Agency v. United States*, 122 Fed. Cl. 111, 115–16 (2015). If, "by necessary implication, the remedy would be a return of the payments that were assessed," then jurisdiction exists. *Id*.

[3] "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States[.]" U.S. Const. art. I, § 8, cl. 1.

[4] "The Congress shall have Power . . . To establish . . . uniform Laws on the subject of Bankruptcies throughout the United States[.]" U.S. Const. art. I, § 8, cl. 4.

> has been limited. *See* Nelson Lund, Comment, *The Uniformity Clause*, 51 U. CHI. L. REVV. 1193, 1193 (1984) ("The nature and extent of the limitation placed on [Congress' power to tax] by the [U]niformity [C]lause has only been infrequently considered by the Supreme Court; in no case has the clause been relied upon to invalidate a statute."). Arguably, the Uniformity Clause is money-mandating, because it contains language directly related to a pecuniary interest.

*Rosenberg v. United States*, 72 Fed. Cl. 387, 395 (2006), *aff'd*, 223 F. App'x 985 (Fed. Cir. 2007). "In that respect the Uniformity Clause is like the Export Clause and the Judges' Compensation Clause, which were held by the United States Court of Appeals for the Federal Circuit to be money-mandating, in part, because they contained such language." *Id.* (citing *Cyprus Amax*, 205 F.3d at 1374–75). Both the Export Clause and Compensation Clause "speak in absolute and unconditional terms, and both protect pecuniary interests" (205 F.3d at 1375)– as do the Bankruptcy Clause and Uniformity Clause.

"The issue before the court is not whether the Uniformity Clause mandates the payment of money when Congress, in fact, violates the Uniformity Clause. Rather, the issue before the court is whether the Uniformity Clause, '**as alleged and pleaded**,' is money-mandating." *Rosenberg*, 72 Fed. Cl. at 395 (emphasis added) (citing *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005); *see also In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 539 F. Supp. 2d 281, 300 (D.D.C. 2008), *aff'd in part, rev'd in part and remanded sub nom. Cohen v. United States*, 578 F.3d 1 (D.C. Cir. 2009), *reh'g en banc granted in part, opinion vacated in part*, 599 F.3d 652 (D.C. Cir. 2010), *and on reh'g en banc in part*, 650 F.3d 717 (D.C. Cir. 2011).

*Rosenberg* and *Long-Distance Tel.* declined to find the Uniformity Clause "as alleged and pleaded" in those cases to be money-mandating due to allegations of *ultra vires* acts by the IRS, and lacking the requisite allegation that Congress violated the clause in question. Plaintiffs in this case

6

allege that Congress violated both the Uniformity and Bankruptcy Clauses, and it is submitted that both Clauses are money-mandating. The absolute, unqualified requirement of uniformity imposed by the Bankruptcy Clause and Uniformity Clause necessarily implies that the remedy for their violation "entails a return of money unlawfully exacted." *See Cyprus Amax,* 205 F.3d at 1373.

Section 1930 as codified violates the Bankruptcy Clause and Uniformity Clause, just like the non-uniform bankruptcy systems it supports. Stated differently, the argument is not that Congress (or anyone) violated the statute itself; the quarterly fees in question were exacted "based on an asserted statutory power," which statute exists "in contravention of the Constitution." *See Aerolineas Argentinas*, 77 F.3d at 1573 (Fed. Cir. 1996).

Conceptually, this case is distinct from cases such as *Norman*, which involved the alleged "contravention of Public Law 102-104" (429 F.3d. at 1095), and more closely resembles *Cyprus Amax*, in which alleged impediment to relief under a tax refund statute did not preclude plaintiff's constitutionally-based causes of action. "Put differently, Cyprus had two alternative avenues through which to obtain relief—a tax refund action or a cause of action based on the Export Clause—and either one is sufficient to invoke the Court of Federal Claims jurisdiction under the Tucker Act." *Cyprus Amax,* 205 F.3d at 1375. Likewise, plaintiffs herein have both statutory and constitutional avenues through which to obtain relief.

**B.     The Latest Decision in *Exide* Contains Multiple Legal Errors.**

The Government argues that "equal fees were also required by the Judicial Conference's standing instructions," and relying on *Exide*, declares that the 2017 Amendment "should have been self-executing in [bankruptcy-administered] districts." [Doc. 26, at 12] (citing *In re Exide Techs,* 611 B.R. 21, 38 (Bankr. D. Del. 2020), *appeal docketed*, No. 1:20-cv-00076-LPS (D.Del. Jan. 17,

2020). In this vein, the Government suggests that "[i]t is not apparent why bankruptcy administrators failed to immediately implement the 2017 amendment, as required by the statute and the Judicial Conference's directive" [Doc. 26, at 12-13], referring to a report by the 2001 Judicial Conference. *See also* 611 B.R. at 38 (citing 2001 Judicial Conference Report at 45-46).

It is, in fact, apparent why the fees remained lower in BA districts: **the Judicial Conference itself reached a different conclusion about the appropriate reach of the 2017 Amendment**, expressing the **very same concerns of retroactivity and due process** raised by plaintiffs. *See* Report of the Judicial Conference Committee on the Administration of the Bankruptcy System, September 2018 (the "2018 Bankruptcy Committee Report"), attached as **Exhibit A[5]**, at 18-20 (observing the fee increase would represent a "substantial increase over the fees currently charged" and seeking to "ensur[e] that debtors receive proper notice before imposing a higher fee on them"). And consistent with the long-standing presumption against retroactive legislation, "the Committee agreed that the quarterly fee calculation changes in 28 U.S.C. § 1930(a)(6)(B) should apply in BA districts beginning in the first quarter of fiscal year 2019 (that is, for any chapter 11 case filed on or after October 1, 2018, and not for cases then pending)." *Id*. at 20 (recognizing constitutional issues of lack of notice and due process). The Judicial Conference adopted this reach of the 2017 Amendment, applying the fee increase only prospectively. *See* Report of the Proceedings of the Judicial Conference of the United States, September 13, 2018 (the "2018 Judicial Conference Report"), available at https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf, at 11-12.

The interpretation of a statute adopted by a body composed of the Chief Justice of the United

---

[5]This document is attached as it is not generally available on the internet or Westlaw.

States, the Chief Judges of each regional Circuit and the Court of International Trade, and a District Judge from each Circuit, based upon the recommendation of a Committee of Circuit, District, and Bankruptcy Court Judges (*see* Exhibit A at 23, listing members), carries substantial weight. *See Matter of Nickerson & Nickerson, Inc.*, 530 F.2d 811, 814 n.5 (8th Cir. 1976) (observing "the views of the [Judicial] Conference are entitled to great deference unless plainly unreasonable or in conflict with the plain intent of Congress"). Given the Judicial Conference's interpretation and the views of multiple courts on the issue,[6] one cannot conclude that Congress "used statutory language that can 'sustain only one interpretation,'" as required for retroactive application. *See St. Cyr v. I.N.S.*, 229 F.3d 406, 414 (2d Cir. 2000), *aff'd*, 533 U.S. 289, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

To the Government's assertion that equal fees were required by sections 1930(a)(6) and (7), and *Exide*'s conclusion that "implementation" is the issue (611 B.R. at 38), multiple courts[7] and the Judicial Conference would disagree.  Both the legislative history of Section 1930(a)(7) and the consistent perception of the Judicial Conference confirm that Section 1930(a)(7) authorizes, but does not require, the Judicial Conference to impose equal quarterly fees.

Indeed, the text that became Section 1930(a)(7) was proposed to Congress by the Judicial Conference after it decided in March 1996 to act on a Bankruptcy Committee recommendation "to institute quarterly chapter 11 fees in bankruptcy administrator districts comparable to those in effect in United States trustee districts so that the revenues go to the judiciary."  Report of Proceedings of

---

[6]*In re Life Partners Holdings, Inc.*, 606 B.R. 277, 285 (Bankr. N.D. Tx. 2019); *In re Buffets, LLC*, 597 B.R. 588, 596-97 (Bankr. W.D. Tex. 2019).

[7] *Cranberry Growers Cooperative v. Layng*, 930 F.3d 844, 856, n.51 (7th Cir. 2019); *In re Circuit City Stores*, 606 B.R. 260, 269 (Bankr. E.D. Va. 2019); *Life Partners,* 606 B.R. at 286-87; and *Buffets*, 597 B.R. at 595.

the Judicial Conference of the United States, March 12, 1996, available at https://www.uscourts.gov/sites/default/files/1996-03.pdf, at 10.  The references to Section 1930(a)(7) in legislative history describe Section 1930(a)(7) in permissive terms.  *See, e.g.,* House Judiciary Committee Report on H.R. 2294, Federal Courts Improvement Act of 1998, March 12, 1998 [105-437], available at https://www.congress.gov/105/crpt/hrpt437/CRPT-105hrpt437.pdf, at 13-15 (confirming the legislation was "introduced at the request of the Judicial Conference of the United States" and that "[t]his section ***would authorize*** the Judicial Conference to implement fees in the bankruptcy administrator program in the judicial districts in the states of Alabama and North Carolina similar to those currently imposed by 28 U.S.C. § 1930(a)(6)") (emphasis added).  The legislation as proposed (and adopted) preserves the Judicial Conference's discretion to impose fees, using the permissive "may," rather than the mandatory "shall." *See* H.R. 2294, 105th Cong., § 205 (1997), available at https://www.congress.gov/bill/105th-congress/house-bill/2294/text/ih.

From the beginning – in 2001, and again in 2018 – the Judicial Conference believed it was "***authorized***" to impose the quarterly fees in BA districts.  *See* Report of the Proceedings of the Judicial Conference of the United States, Sept./Oct. 2001, available at https://www.uscourts.gov/sites/default/files/2001-09_0.pdf, at 45-46; 2018 Judicial Conference Report at 11-12; and Bankruptcy Committee Report at 18-20.  Nothing in the record of the actions of the Judicial Conference suggests it believed that it had no choice under the statute but to impose the fees, and its interpretation is entitled to great deference.  *Nickerson & Nickerson*, 530 F.2d at 814, n 5. Section 1930(a)(7) is intentionally permissive in nature, and it was not until litigation regarding issues herein that it was suggested this section requires the Judicial Conference to impose equal fees.

Respectfully submitted,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL, APLC**

By: /s/ Bradley L. Drell
    Bradley L. Drell  (T.A.)
    Heather M. Mathews
    Chelsea M. Tanner
    2001 MacArthur Drive
    P. O. Box 6118
    Alexandria, Louisiana 71307-6118
    Phone: (318) 445-6471 * Fax: (318) 445-6476
    bdrell@goldweems.com

**ATTORNEYS FOR THE PLAINTIFFS**

-And-

**RANTZ IV, LLC**

By: /s/ August Rantz, IV
    August Rantz, IV
    101 La Rue France, Ste. 500
    Lafayette, Louisiana 70508
    Phone: (337) 269-9566 * Fax: (337) 269-6375

## UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ACADIANA MANAGEMENT GROUP, LLC, et al,** | ) | **Case No. 19-496** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Judge Patricia E. Campbell-Smith** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing *Plaintiffs' Sur-Reply* has been served upon the following counsel of record via CM/ECF electronic notification:

Shari A. Rose
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Untied States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044

Alexandria, Louisiana, this 21st day of April, 2020.


           /s/ Bradley L. Drell
           OF COUNSEL